THOMAS W. ALLRED, Respondent, v. MARK BRAY, Appellant.

1. *Trespass—Action—Damages.*—All persons who wrongfully contribute in any manner to the commission of a trespass, or who, after the same has been committed, assent to it, are responsible as principals, and each is liable to the extent of the injury done.

2. *Practice—Trial—Trespass—Evidence—Damages.*—In ascertaining the liability of a party sued in an action of trespass for taking goods, committed by several persons, it is only necessary to show that the defendant participated in the wrong done; the amount of property taken by him, if he took any, is wholly immaterial.

3. *Practice—Trial—Verdict—Excessive Damages.*—In cases where nothing appears upon the record to justify the conclusion that there was anything corrupt or improper in the amount of damages found by a jury, the Supreme Court will not interfere with the verdict even though it may seem to be too large upon the facts proved.

4. *Damages—Trespass.*—In an action of trespass for breaking open the store of the plaintiff and taking and carrying away his goods, the mere value of the goods taken is not the measure of damages. The plaintiff is entitled to compensation for the injury done.

*Appeal from Christian Circuit Court.*

The plaintiff asked the following instructions, which the court gave:

1. If defendant aided or assisted in taking the goods, or any part thereof, at the time specified, he is liable for the entire amount taken.

Allred v. Bray.

2. If the defendant was then aiding or abetting or countenancing said robbery, he is responsible for the damage sustained by plaintiff.

The defendant asked the following instructions:

1. Unless the defendant was present and took, or, being absent, endorsed the taking of the goods charged in the plaintiff's petition, he is not liable for the goods taken, nor for damages for the taking of the same.

2. If the goods were taken by the public enemy, the defendant is not responsible.

3. Though the defendant may have had some of the goods in his possession, unless he had them under such circumstances as induces the belief that he intended to appropriate them to his own use, and deprive plaintiff of the property of the same, he is not liable any further than the mere value the goods he had in his possession.

4. If the plaintiff had abandoned the goods upon the approach of the public enemy, they became the property of the public enemy when appropriated by the same; and if after such appropriation by said public enemy such enemy disposed of said goods, the parties to whom they were so disposed cannot be held responsible for the trespass.

5. If said goods were taken during the absence of defendant, he is not liable unless he is proven to have previously advised the taking, or done some act in aid thereof.

6. Defendant, if liable at all, is only liable for such goods as he actually took himself, and not liable for what said company took, unless defendant belonged to said company.

Of which the court gave the first, third, and fifth, and refused the second, fourth, and sixth.

*Krum, Decker & Krum*, for appellant.

To make a party liable as joint trespasser for the acts of others, it must be alleged and proved either that they acted in concert, or that the act of the party sought to be charged ordinarily or naturally produced the acts of the others—2

Hill. Torts, 446–9; Brooks v. Ashburn, 9 Geo. 298; Sartin v. Saling, 21 Mo. 387.

It is error to give instructions, even if correct in the abstract, unless there is evidence to support them—Atkin v. Nicholson, 31 Mo. 91; Kennedy v. N. Mo. R.R., 36 Mo. 351; Jaccard v. Anderson, 37 Mo. 91.

In trespass for taking goods, the goods must be specifically described in the petition—2 Hill., Torts, 203.

The measure of damage in an action of trover or trespass *de bonis asportatis*, can be no more than the value of the goods at the time of the conversion. The action is brought in this instance to recover this value; no more is claimed in the petition. The measure of damage upon this petition could only be the value of the goods at the time, and not all damages sustained by plaintiff by reason of robbery—State to use v. Smith, 31 Mo. 566; Freidenheit v. Edmunson, 36 Mo. 226.

As under this form of action the plaintiff could not recover more than the value of the specific goods at the time, with interest, and as there was no evidence of value, the damages as assessed are necessarily excessive, and for this reason judgment should be reversed—Goetz v. Ambs, 22 Mo. 171.

The proof shows that the goods were taken by the public enemy, who took possession with overpowering force. Defendant did not belong to this rebel army, had no connection with it, nor can he be made responsible for its acts, which were not done by his direction or knowledge. The doctrine of assent as foundation for an action against him as joint trespasser has no application to seizure by an enemy in time of war. His assent or dissent under the circumstances would have been equally unimportant. The rebel army had confiscated the goods, and although *de jure* Allred's property might continue, *de facto* the goods were lost to him; and it seems a gross wrong to hold the defendant, who subsequently approved the trespass, not done for his benefit nor instigated by him, liable for Allred's loss. The trespass was not committed for his benefit, nor did he have any profit of it, and

therefore the sixth instruction ought to have been given for the appellant.

*Ewing & Holliday,* for respondent.

The law of the case was properly declared in the instructions given by the court—2 Hill. Torts, 464; Hare v. Little, 28 Ala. 236; Clark v. Boles, 15 Ark. 452; Owens v. Derby, 2 Scam. 26.

The sixth instruction asked by defendant is manifestly erroneous. It limits the liability of defendant to such goods only as he may have actually taken himself, and excludes entirely the hypothesis of a common participation between defendant and others in the alleged trespass, and establishes a several liability therefor. It also erroneously assumes or infers his non-liability if he did not belong to "said company." Although not being a member of the company, he may have actually participated in the trespass.

FAGG, Judge, delivered the opinion of the court.

There seems to be no principle of law better settled than that all persons who wrongfully contribute in any manner to the commission of a trespass, or after the same has been committed for their benefit assent to it, are responsible as principals, and each one liable to the extent of the injury done. This was an action of trespass instituted against the appellant Bray, who, as the petition alleges, together with other persons unknown to the respondent, wrongfully took a large quantity of goods, the property of respondent, by which he was damaged in the sum of three thousand dollars.

The answer is simply a denial of the allegations of the petition. The proof shows that respondent's storehouse, situate in the town of Linden, in the county of Christian, was broken open and robbed of a large amount of goods, by a company of rebels connected with the army commanded by Sterling Price, in the month of August, 1861; that on the next day, and whilst the company was still in possession of the store, the appellant Bray was seen to come out of it with some of the

goods in his hands, and one witness heard him remark "that it made no difference, that plaintiff (Allred) was a black republican." Only two other witnesses testified, one for the plaintiff and the other for the defendant. The second witness for the plaintiff did not see any of the goods in possession of Bray. He says : " I came into the town of Linden the morning after the rebels took possession of the place and plaintiff's store and the goods and property therein. I went into the store-room to warm ; the rebels were then in possession. Defendant came out of plaintiff's house with two little pieces of pine lumber ; he put them into the stove and said, ' Boys, let us have a better fire.' I did not see defendant do anything else." The last witness, after stating that he was in the town and saw the parties who broke open the store and took·possession of the goods, and that Bray was not present, proceeds to say : " The defendant came there the next day. I saw him when he first came to the plaintiff's store on that day. I heard him say to the men who had broken open the store and taken the goods out, that they ought not to have done it ; that plaintiff owed both parties, and was in debt ; that it was wrong ; that plaintiff would not be able to pay his debts." With the exception of some minor details, this was the substance of all the testimony in the case.

We pass over the question in reference to the granting of a new trial, as it does not appear to be insisted upon by the counsel for appellant.

The point as to the admission of improper evidence relates to a single expression made by the first witness on the part of the plaintiff. He states at the conclusion of his testimony that " the defendant was a rebel at the time of taking the goods." It was a fact tending to show the concert of action between Bray and the parties who actually broke open the store and first took possession of the goods. That expression, coupled with the statement heretofore quoted from the testimony of the same witness—" that it made no difference, that plaintiff was a black republican "—certainly would go very far towards showing the motives and purposes which actuated

the defendant upon that occasion. The cause was tried by the court sitting as a jury, and there is nothing in the record from which we are at liberty to draw the inference that this statement could have operated prejudicially to the defendant.

The next point that we shall examine relates to the sufficiency of the testimony to authorize the declarations of law given on behalf of the plaintiff. In ascertaining the liability of a party in an action of this sort, it is only necessary to show that he participated in the wrong done. The amount of the property taken by him, if indeed he did take any, is wholly immaterial. It is unnecessary likewise to show what degree of efficiency he exhibited in giving aid and countenance to those who actually broke into the store and took the plaintiff's goods. It is enough if he was found to be acting in concert with the others. It is not our province to weigh the evidence for the purpose of ascertaining whether the finding of that fact was correct or not. The evidence certainly tended to prove both of the propositions contained in the instructions given for plaintiff, and there was no error in giving them. The three instructions given on the part of the defendant stated the law as favorably for him as the facts and circumstances authorized. The three instructions asked by the defendant and refused by the Circuit Court, were drawn upon the theory that the goods in question were taken by the public enemy after they had been abandoned by plaintiff, and that defendant was not connected with the military company that actually committed the robbery. It is, perhaps, sufficient to say that there was no evidence in the cause upon which these instructions could be predicated. The facts proved did not tend to show an abandonment by the plaintiff of his property, and it made no difference, in point of fact, whether the defendant was connected with the military organization of which the company spoken of was a part, or not. If he was present at any time during the commission of the wrongful act, giving aid and countenance to it, he should be held liable to the extent of the injury done. It made no difference that the defendant was not present on the day that the

house and goods were taken possession of by this company. The possession was continued until the next day and up to the time that defendant was seen under such circumstances as tended to show his co-operation in the trespass. The entire proceeding, in legal contemplation, was but one act, and we see nothing in the record to show that the court acted improperly in the giving or refusing of instructions.

The verdict and judgment in this case was for three thousand dollars, the amount of damages laid in the petition. This is claimed to be excessive, and sufficient to authorize this court to reverse the judgment of the Circuit Court. In cases where nothing appears upon the record to justify the conclusion that there was anything corrupt or improper in the amount of damages found by the jury, this court will not interfere with the verdict, even though it might seem to be too large upon the facts proved.

Wherever damages are claimed for the doing of a wrongful act, it is right and proper that every circumstance going to show the aggravation, as well as the actual injury done, should be taken into consideration. The evidence in this case shows that the plaintiff left his home and property on the approach of the parties who actually broke open the storehouse; that his property was taken and appropriated or destroyed, and his business stopped. He was entitled to compensation for all the injury done, and the value of the goods taken is not the measure of damages in such a case—Freidenheit v. Edmunson et al., 36 Mo. 226.

The other judges concurring, the judgment of the Circuit Court will be affirmed.