HAILEY v. BROOKS et al.  (No. 8671.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 23, 1916.)

1. SCHOOLS AND SCHOOL DISTRICTS ⊚⇒169 — POWERS OF OFFICERS.

Generally speaking, the superintendent, principal, and board of trustees of a public free school, to a limited extent at least, stand, as to pupils attending the school, in loco parentis, and they may exercise such powers of control, restraint, and correction over such pupils as may be reasonably necessary to enable the teachers to perform their duties and to effect the general purposes of education.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 341; Dec. Dig. ⊚⇒169.]

2. SCHOOLS AND SCHOOL DISTRICTS ⊚⇒172 — POWERS OF OFFICERS—"BOYCOTT."

Where the principal, superintendent, and school trustees inaugurated a school cafeteria and supply house, and established a rule for punishment of pupils who purchased supplies of plaintiff, who alleged that he was selling wholesome food in premises wherein order was maintained, and that the sole purpose of the order was to destroy his business, their action amounted to a boycott, and transcended their authority

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

—(citing Words and Phrases, First and Second Series, Boycott).

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 343; Dec. Dig. ☞172.]

3. MONOPOLIES ☞17(1)—ACTS OF PUBLIC OFFICERS.

If the inference can be said to be warranted that order of school officers, establishing supply house and prohibiting pupils from trading with plaintiff, was in the interest of public schools, neither the superintendent, principal, not trustees would be authorized to act in violation of Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796, 7798, prohibiting trusts for a purpose not properly pertaining to the interest of the pupils, the cause of education, or the preservation of school property.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. ☞17(1).]

4. APPEAL AND ERROR ☞837(3) — SCOPE OF INQUIRY—INJUNCTION.

Where an injunction is refused upon the petition alone, the court, on appeal from the order made ex parte, cannot consider the supposed knowledge of the judge or contradictory affidavits by the defendants, but is limited to the petition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3263; Dec. Dig. ☞837(3).]

5. INJUNCTION ☞152—RIGHT TO HEARING—DISCRETION OF COURT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4651, providing that on application for injunction the judge may fix the time for hearing, it is within his discretion whether there shall be a hearing, and a failure to grant a hearing does not affect his jurisdiction, since even if the injunction is granted, the defendants may procure a hearing by a motion to dissolve the writ.

[Ed. Note.—For other case, see Injunction, Cent. Dig. §§ 337, 343; Dec. Dig. ☞152.]

Appeal from District Court, Taylor County.

Injunction by E. E. Hailey against J. L. Brooks and others. From an order denying the writ, petitioner appeals. Order set aside, and cause remanded.

Kirby & King, of Abilene, for appellant. Ben L. Cox, of Abilene, for appellees.

CONNER, C. J. This appeal is from an order of the district judge of the Forty-Second judicial district denying an injunction sought in the petition of E. E. Hailey. The petition complains of J. L. Brooks, superintendent, and A. H. Roberts, principal, of the Abilene Public Free Schools, and of others alleged to be trustees of the district of said schools. It is charged, in substance, that the petitioner, Hailey, owned and conducted a small mercantile establishment adjoining the Abilene Central Ward and the Abilene High School Buildings; that he therein offered for sale to the pupils and children attending the schools mentioned various and sundry school supplies, such as pens, pencils, tablets, and ink, and in addition thereto sold to such students "out of good and wholesome material" hamburgers composed of bread and mashed meats, properly cooked, as also other little articles of food and confections, all of which are alleged to be wholesome and harmless. It is further alleged that the business had

been conducted for some time, and that the plaintiff, by careful attention, had built up a business of the net profit to him of $30 a week. He further alleges that in the conduct of his business he maintained orderly, decent and respectable premises; that nothing was permitted in and about his premises that would in any way demoralize the school children; that the lunches and wares sold to such children were of the reasonable value for which he sold them, and as good as could be had for the money at any other place in Abilene; and that such things were necessities under the circumstances; notwithstanding all of which, that on a date named in October of the present year, the said superintendent and principal, joined by said trustees—

"each and all of them maliciously, unlawfully and willfully, and without just cause, and with the intention then and there of destroying the business owned and operated by this plaintiff, and with no other purpose in view, conspired together and did enter upon a course of action, which was put into effect by the said superintendent, principal, and trustees as aforesaid, to the end that a rule or order was promulgated by the authorities aforesaid that any and all children attending the Abilene public schools, and particularly the Abilene High School and the Abilene Central Ward School, were prohibited from dealing and trading with this plaintiff, and were personally, publicly, collectively, and separately warned and commanded not to trade with this plaintiff, and upon penalty that they would be punished by the authorities, and, if persisted in, that they would be expelled from school."

It is further charged:

"That the purpose of this act and order by the defendants was to inure to the benefit of an establishment of a like kind which had, on or about that time, been opened in the basement of one of the school buildings, and which said establishment was dealing in the same character of wares, merchandise, and food as this plaintiff, and which said establishment this plaintiff charges was owned and controlled by the defendant J. L. Brooks and A. H. Roberts, and other members of the faculty of the Abilene High School, the names of which are unknown to the plaintiff; that by such order, prohibiting children and patrons of this plaintiff from dealing and trading with him, it was intended, and so stated by these defendants herein, that the purpose of the same was to enforce the children to trade with the establishment in the basement of the public school building, to the end that persons other than this plaintiff would profit thereby, and to the end that this plaintiff would be driven from his location and his business destroyed; that defendants and their agents and servants stated publicly that they would put plaintiff out of business, and that they took the action complained of for no other purpose."

It is further alleged that since the order complained of went into effect, the patronage of his business has absolutely ceased through fear on the children's part of punishment, and that as a result his said business has been ruined and destroyed. It is charged that said order was unreasonable and without the scope of defendants' authority, and because it had been promulgated with the avowed purpose and intention to destroy the

plaintiff's business, and had been issued maliciously and willfully, and he prays for actual and exemplary damages in the sum of $5,030.

The petition was duly verified by the plaintiff, Hailey, but on presentation to the judge of said district court, his prayer for the issuance of an injunction was denied; hence the appeal, as stated in the beginning.

[1] Generally speaking, it must be said that the superintendent, principal, and board of trustees of a public free school, to a limited extent at least, stand, as to pupils attending the school, in loco parentis, and they may exercise such powers of control, restraint, and correction over such pupils as may be reasonably necessary to enable the teachers to perform their duties and to effect the general purposes of education. Reasonable rules to enforce discipline, to preserve order, both in the school building and upon the grounds, to protect the morals, the health, and the safety of pupils, and to do, and to require pupils to do, whatever is reasonably necessary to preserve and conserve all of these interests may be made and enforced. But any such rule or regulation, whether adopted by the teachers or by the trustees, or by the concurrence of both teachers and trustees, must be reasonable within itself, and not opposed to some specific rule of law. See 35 Cyc. 1134, 1135; State v. Randall, 79 Mo. App. 226.

[2] It seems clear to us that the rule and regulation complained of by the appellant, as alleged in his petition, contravenes the principles above announced. He alleges, in substance, that the merchandise or wares vended by him were good and wholesome, that he maintained order in and about his premises, and that the "sole purpose" of the promulgation and enforcement of the order complained of was to destroy his business in the interest of others. Such confederated action for such purpose, and such purpose alone, necessarily excludes any purpose which it would be lawful and proper for the teachers and trustees to entertain and attempt to enforce. It amounts to a "boycott" of the appellant, which, in popular acceptation, may be said to be an organized effort to exclude a person from business relations with others by persuasion, intimidation, or otherwise, and therefore within the meaning of unlawful conspiracies, which will be restrained upon proper application. See 1 Words and Phrases, title, "Boycott," page 855. Indeed, the action complained of, as it is alleged, seems to come fairly within those acts, agreements, or combinations denounced by our statutes on trusts. Article 7796, 4 Vernon's Sayles' Texas Civil Statutes, defines a "trust" as:

"A combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes: (1) To create, or which may tend to create, or

carry out restrictions in trade or commerce * * * or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this state. * * * (7) To abstain * * * from the purchase or sale of merchandise, produce or commodities."

Article 7798 of the same chapter reads:

"Either or any of the following acts shall constitute a conspiracy in restraint of trade: (1). Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or * * * commodity, enter into an agreement or understanding to refuse to buy from or sell to any other person, firm, corporation or association of persons, any article of merchandise, produce or commodity. (2) Where any two or more persons, firms, corporations or association of persons shall agree to boycott or threaten to refuse to buy from or sell to any person, firm, corporation or association of persons, for buying from or selling to any other person, firm, corporation, or association of persons."

Article 7799 reads:

"Any and all trusts, monopolies and conspiracies in restraint of trade, as herein defined, are prohibited and declared to be illegal."

[3] Appellees have suggested to us in their answering brief that it is to be inferred that the order complained of was in the interest of the public schools, but, as we have seen, as it seems to us, the language of the plaintiff's petition excludes any such inference. But even if the inference can be said to be warranted, neither the superintendent, principal, nor trustees would be authorized to proceed in the manner alleged in violation of our statute, and for a purpose not properly pertaining to the interests of the pupils, or the cause of education, or to preservation of school property.

[4] Appellees further argue that it is to be presumed that the district judge who refused the writ of injunction was on the ground, and did so because of his personal knowledge of the parties, the situation, and of the lack of foundation for the charges made in the petition, and affidavits on the part of the superintendent and by one or more of the trustees complained of are attached to the brief, which may be said, in certain particulars, to contradict the allegations of the appellant's petition, but we do not understand that we are authorized to consider either the supposed knowledge of the judge or the contention of said affidavits. The district judge acted alone upon the appellant's petition, without a hearing of any character, and for this court to now undertake to determine the issues indicated by the conflicting affidavits and inferences suggested would, in effect, be to deprive the plaintiff of his right to offer testimony in open court in support of the truth of his averments. It has accordingly been held that such an answer and affidavit on appeal can only be considered when the same constitute a part of the case before the judge at the time he made the order appealed from. In

other words, when the hearing by the judge is ex parte, and the order refusing the injunction, as here, is based upon the allegations in the petition alone, answers and counter affidavits filed after the order has been made cannot be considered on appeal. See City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 460; Midleton v. Presidio County, 129 S. W. 637.

[5] But brief notice will be necessary, we think, of the further suggestion in argument, to the effect that to now disturb the court's order is to deprive the appellees of the right or privilege of a hearing. Our statute provides that, upon an application for any writ of injunction, the judge may, if he is of the opinion that delay will not prove injurious to any party, cause notice of the application to be served upon the opposite party, his agent or attorney, and fix a time and place for the hearing of the application. 3 Vernon's Sayles' Texas Civil Statutes, art. 4651. Whether there shall be a hearing, however, rests in the sound discretion of the judge to whom the application is presented, and a failure in this respect does not affect his jurisdiction to grant or refuse the writ without such hearing. Commissioners of Floyd County v. Nichols, 142 S. W. 37; Holbein v. De La Garza, 59 Tex. Civ. App. 125, 126 S. W. 42. Upon the granting of the prayer of the petition in any given case, the appellees may procure a hearing by a motion, under the statute, to dissolve the writ, or they may delay until a trial upon the merits, and thus secure a hearing.

We conclude that the court erred in refusing appellant's prayer for a writ of injunction upon the showing made upon the face of the petition alone, and the order to that effect is hereby set aside, and the cause remanded for further proceedings in accordance with this opinion.